UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:
PANACEA PARTNERS, LLC                          Case No. 08-17391

Debtor and Debtor-in-Possession.               Chapter 11

_____/             Judge Eugene Wedoff

MOTION FOR
INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

The Debtor, Panacea Partners, LLC, by and through counsel, Michael R. Collins of the firm of Collins & Collins, states in support of this First Day Motion for Use of Cash Collateral, Granting of Adequate Protection and Setting Hearing Date for Further Use of Cash Collateral".

1.      Debtor filed a Chapter 11 proceeding on July 7, 2008 and this Motion on July 9, 2008.

2.      In the Motion, the Debtor seeks authority to use certain funds which are cash collateral within the meaning of 11 U.S.C. § 363(a) ("cash collateral"), in order to pay operating expenses, including payroll and payroll-related expenses, subject to the terms and provisions of this Order.

3.      A preliminary hearing on the Motion is required with Notice of the preliminary hearing given to cash collateral lienholder and its counsel for Bridgeview Commercial Finance, Inc. (the "Bank") (because the Bank has a lien on the cash collateral), the Office of the United States Trustee, and the creditors on the list filed pursuant to Fed. R. Bankr. P. 1007(d).

4.      Debtor has continued in the management and possession of its business and properties as a debtor-in-possession.

5.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157.

6. Venue of this Chapter 11 case in this district and division is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. This is a "core" proceeding, for purposes of 28 U.S.C. § 157(b), as to which this Court may enter a final order; notwithstanding the foregoing.

8. This motion requests the Court enter a preliminary or interim order, pursuant to Fed. R. Bankr. P. 4001(b)(2).

9. Notice of the hearing on the Motion is required and is adequate and sufficient under the particular circumstances, for purposes of 11 U.S.C. §§ 102(1), 105, 361, 363, Fed. R. Bankr. P. 2002, 4001, 9007, 9013, 9014, and other applicable law and rules of Court.-

10. The Debtor proposes to stipulate with the Bank that, prior to the Petition Date, the Bank made loans and advances and provided credit accommodations to the Debtor pursuant to the terms of the following ("Credit Agreements"):

(1) The Debtor executed and delivered to the Bank a Business Loan Agreement dated July 9, 2007 regarding a principal loan in the amount of $250,000 evidenced by a Promissory Note in the amount of $250,000 maturing in July 8, 2008 and secured by a security interest in the Debtor's inventory, chattel paper, accounts, equipment and general intangibles, including all substitution and proceeds thereof pursuant to a Commercial Security Agreement dated July 7, 2009 and containing cross collateralization provisions ("$250,000 Term Loan") (See: Group Exhibit 1 attached hereto);

(2) The Debtor also executed and delivered to the Bank a Business Loan Agreement and Notice of Final Agreement dated July 9, 2007 regarding a principal loan in the amount of $529,000 evidenced by a Promissory Note in the amount of $529,000 maturing in January 1, 2008 and secured by a security interest in the Debtor's inventory, chattel paper, accounts, equipment and general intangibles, including all substitution and proceeds thereof pursuant to the aforementioned Commercial Security Agreement dated July 7, 2009 and containing cross collateralization provisions ("$529,000 Term Loan") **(See Group Exhibit 2 attached hereto)**;

(3) The $529,000 Term Loan was further secured by the Commercial Guaranty of Jason R. Hyatt, the Commercial Guaranty of Michael R. Demnicki, a Mortgage on the real property located at 312 Brownstone Drive, St. Charles, IL 60174

(owned by Jason Hyatt), a Mortgage on the real property located at 330 S. River Lane, Geneva, IL 60134 (owned by Jason Hyatt), and a Mortgage on the real property located at 312 Brownstone Drive, St. Charles, Illinoins (owned by Michael Demnicki).

11. The Debtor proposes to stipulate as of July 7, 2008, the Debtor was indebted to the Bank, without defense, counterclaim, or offset of any kind, in the amount of $759,000, subject to the Bank's accounting to the Debtor of the Debtor's payments of principal and interest, and to the extent allowed under 11 U.S.C. §506(b) interest that accrues and continues to accrue on the principal balance from July 7, 2008 and from and after the Petition Date and other amounts allowable under the Credit Agreements.

12. The Debtor proposes to stipulate with the Bank that the Debtor's indebtedness to the Bank under the Credit Agreements is secured by duly perfected, first priority liens and security interests in and to substantially all of Debtor's pre-petition property, including, but not limited to, inventory, chattel paper, accounts, monies, equipment and general intangibles and proceeds of the foregoing (collectively, the "Pre-Petition Collateral"), pursuant to, among other agreements and instruments, the Commerical Security Agreement (except for the security interest of Butler Capital Corporation in and to the equipment listed on **Exhibit 3** attached hereto). The Debtor proposes to stipulate with the Bank that the Bank's security interests and liens were perfected by the due recording of UCC financing statements describing the Pre-Petition Collateral with the Secretary of State of Illinois.

13. Attached to this Motion as **Exhibit 4** is a proposed form of budget covering the period July 7, 2008 through August 7, 2008 (the "Interim Period"), and which sets forth certain operating expenses that the Debtor proposes to pay during such Interim Period (the "Budget").

14. The amounts of expenses that the Debtor proposes to pay under the Budget, through and including September 30, 2008, are necessary to avoid immediate and irreparable harm to the

Debtor's estate, pending a further hearing on the Motion. It therefore is appropriate to authorize the Debtor to expend "cash collateral" of the estate, through and including August 7, 2008 (and subject to the other terms and provisions of this Order), solely to pay the expenses enumerated in the Budget. The Debtor and the Bank may agree to amend the Budget to cover periods of time after the Interim Period:

15.     Thus far, no official committee of unsecured creditors ("Committee") has been appointed in this Chapter 11 case.

WHEREFORE the Debtor requests:

A.     The Motion be granted, on a preliminary basis.

B.     That an Order would provide that the Debtor shall be and hereby is authorized during the Interim Period to expend cash collateral solely to pay those expenses that are enumerated in the Budget which includes a cash collateral payment to the Bank of $6,350 by the 20th of each month during the interim period and the Debtor shall comply with the Budget and an accrued U S Trustee fee. During the Interim Period, the Debtor shall provide the Bank and United States Trustee and a Committee, if one is appointed, with such information as and when the Bank or United States Trustee (or Committee) reasonably may request, to confirm that the categories and amounts of expenses that the Debtor proposes to pay or that the Debtor has paid are consistent with, and are in amounts that will not exceed or have not exceeded, the respective categories and amounts of such expenses, for and during the applicable time period(s), that are set forth in the Budget. The Debtor will not use or attempt to use any of the proceeds of its respective accounts receivable or any other cash collateral, except in accordance with the terms of this Order. The Debtor shall not expend funds or incur obligations other than for the purposes and in the amounts set forth in the Budget;

C.     As partial (but not necessarily whole or complete) adequate protection for the Debtor's use of cash collateral in which the Bank has an interest the Debtor will do the following:

    1. To the extent of any cash collateral used and/or any diminution in the Bank's interest in the estate's interest in property, the Bank shall be granted (effective retroactive to, as of, and from the Petition Date), but subject to the prior perfected security interests in equipment listed on **Exhibit 3** hereto granted to Butler Capital Corporation, replacement security interests and liens (to the same extent, validity, enforceability, perfection and priority as the security interests and liens the Bank had immediately preceding the Petition Date) in and to all personal property, of the Debtor and its bankruptcy estate, of whatever kind or nature, whether acquired prior to, on, or subsequent to the Petition Date,

including, without limitation, and by way of general description:

a. All accounts, contract rights, chattel paper, electronic chattel paper, documents, letter-of-credit rights, promissory notes and instruments, and investment property;
b. All obligations for the payment of money arising out of the sale, lease or other disposition of goods, merchandise or services which give rise thereto;
c. All goods, including, without limitation, inventory of whatsoever kind or nature, any other personal property held for sale, exchange or lease for use in Debtor's business, all of Debtor's right, title and interest (and all of Debtor's rights and remedies, security interests and liens) in, to and in respect of the accounts and the goods relating thereto (including, without limitation, rights of replevin, repossession and reclamation), software, furniture, machinery, fixtures and equipment and personal property acquired for use in the Debtor's business;
d. All cash, cash equivalents, deposit accounts, personal property leases, and causes of action (whether arising in contract, tort, or otherwise), including commercial tort claims;
e. All general intangibles (including, without limitation, registered and unregistered patents, trade names, trademarks, and the goodwill of Debtor's business symbolized thereby, copyrights, service marks, trade secrets, customer lists, licenses and royalties arising from the licensing of any intellectual property, and all other intellectual property of any kind or description) and payment intangibles;
f. All of the Debtor's right, title and interest in and to any equity securities, stock, membership interests, partnership interests and other evidence of ownership in or to any other person or entity;
g. All proceeds of insurance relating to the Debtor, the Debtor's property, property of the Debtor's estate, or any interruption in or cessation of the Debtor's business, all Federal, state and local tax refunds, all franchise rights, and all other claims and property recovered by or on behalf of the Debtor or by any trustee of the Debtor (whether in the Debtor's case or any Chapter 7 case to which any of the Debtor's case is converted); and
h. all proceeds, products and profits of all and any of the foregoing, whether cash or noncash, and all property described as "Collateral" in any of the Credit Agreements (collectively, the "Collateral" or the "other Collateral"). The security interests and liens granted to the Bank shall have the same priority that the Bank's security interests and liens possessed upon the Pre-Petition Collateral immediately before the Petition Date;
i. The Debtor will maintain its post-petition operating accounts, payroll account, tax deposit accounts, and any and all of its other debtor-in-possession accounts at and with the Bank (all such post-petition accounts are referred to collectively as the "DIP Accounts"). The Bank's security interests, pledges, and liens shall attach and continue in full force and effect in the DIP Accounts. If the Debtor receives any payments on accounts receivable, or any other cash collateral, the Debtor shall promptly deposit

        such payments or other cash collateral into the DIP Accounts;

j. The terms and provisions of the Credit Agreements will be binding on the Debtor and its estate, retroactive to the Petition Date;

k. Debtor shall reduce the outstanding principal balance under the Credit Agreements during the Interim Period by paying to Bank on the twentieth day of each month an amount equal to ½ of the Debtor's available cash flow in excess of the Budget until and unless otherwise agreed to by the Debtor and the Bank and the parties may review this provision within a reasonable time for modification if circumstances chance; and,

l. The security interests and liens granted to the Bank pursuant will be deemed automatically perfected, without the necessity of any further action by or on behalf of the Bank, to the same extent that the Bank's security interests and liens on any pre-petition property of the Debtor were perfected immediately before the Petition Date; such security interests and liens granted herein to the Bank in the Collateral shall be prior and senior to all security interests, liens, claims and encumbrances of all other creditors in and to any of the Collateral. If the Bank, in its sole discretion, shall elect for any reason to file financing statements or other documents with respect to such security interests and liens, the Debtor will execute, or cause to be executed, all such financing statements or other documents upon the Bank's reasonable request (and the Bank is authorized to prepare and record "all assets" financing statements as against the Debtor), and the filing, recording or service (as the case may be) of such financing statements or similar documents would be deemed to have been made at the time of and on the Petition Date. The Bank, in its sole discretion, may file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of the Order being requested.

D. During and after the Interim Period, the Debtor will give the Bank's respective officers, employees, counsel, auditors, and consultants and the Committee's counsel or other professionals (if any) reasonable access to the offices and facilities of the Debtor, and to the Debtor's books and records, during regular business hours, for the purposes of general inspection and review, or for monitoring the Debtor's operations and assets,

E. The Debtor will at all times maintain insurance coverage on all Pre- Petition Collateral and other Collateral as required by the Credit Agreements, which shall name the Bank as loss payee or additional insured with respect to it interests in the Pre-Petition Collateral and

other Collateral, and the Debtor will promptly provide the Bank with appropriate evidence of such insurance coverage. Such insurance coverage shall provide that the same shall not be canceled without at least thirty (30) days' advance written notice to the Bank to the extent possible.

F. To the extent that any cash collateral is used by the Debtor for purposes not permitted under this Order, the Bank would have an allowed claim therefor, which claim would have priority over all other administrative expenses allowed under Sections 503(b) and 507(a)(l), all as contemplated by Section 507(b) of title 11 except Trustee fees. The foregoing would be without prejudice to any other claim that the Bank may have under Section 507(b) of title 11;

G. And the Court grant all other proper relief in the premises.

Respectfully submitted,

PANACEA PARTNERS, LLC.
Debtor and Debtor-in-Possession

By: _____
One of its attorneys

Michael R. Collins ARDC#6194168
John P. Collins ARDC#62001019
Harold E. Collins ARDC#
COLLINS & COLLINS
8 S. Michigan Ave., Ste. 1414
Chicago, IL 60603
312-201-8700
FAX 312-606-0234
Michael.Collins@collinsandcollins.com